UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAYMOND DONNELLY, O'TARA JOHNSON, AND DANTE WILLIAMS | § § § § | |
| *Plaintiffs*, | § | CIVIL ACTION NO. 3:20-cv-1106 |
| v. | § § | |
| ACADEMIC PARTNERSHIPS LLC, | § § | |
| *Defendant*. | § § § | |

## ORIGINAL COMPLAINT

Plaintiffs RAYMOND DONNELLY, O'TARA JOHNSON, AND DANTE WILLIAMS (collectively "Plaintiffs"), by and through their attorneys, bring this action for damages and other legal and equitable relief from the violation of the laws proscribing discrimination based on race, color, and gender stating the following as Plaintiffs' claims against Academic Partnerships LLC ("Defendant").

## INTRODUCTION

1.  This is an action brought by Plaintiffs seeking damages from Defendant for acts of discrimination based on race, color, and gender. Defendant's acts of discrimination are in violation of Title VII and 42 U.S.C. § 2000e *et. seq.* of the Civil Rights Act of 1964, as amended and 42 U.S.C § 2000e *et. seq.*, the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 *et seq.*; the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a *et seq.*; and Title II of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq*.

2.  Defendant is a higher education company specializing in partnering with colleges and universities around the world to establish and manage their online course curriculum. Defendant maintains offices in Dallas, Texas.

3. Plaintiffs are formerly employed by the Defendant. Additionally, Plaintiffs all worked in Defendant's office located in Dallas, Texas.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) 42 U.S.C. § 1981 *et seq*., as amended and 42 U.S.C. § 1981a *et seq*., as amended. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

6. Defendant is a privately held Texas corporation with its principal place of business located at 600 N Pearl St., Suite 900, Dallas, TX 75201. Upon information and belief, Defendant employs more than two-hundred and fifty (250) persons and conducts business across the United States, as well as several other countries.

7.      Plaintiff RAYMOND DONNELLY is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American male citizen of the United States of America and is a resident of the State of Texas.

8.      Plaintiff O'TARA JOHNSON is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

9.      Plaintiff DANTE WILLIAMS is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American male citizen of the United States of America and is a resident of the State of Texas.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

10.     Plaintiff Johnson and Plaintiff Williams who have herein alleged claims pursuant to Title VII have timely filed complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC").

11.     Plaintiff Johnson and Plaintiff Williams who have herein alleged claims pursuant to Title VII have received their Notice of Right to Sue letters from the EEOC prior to the filing of this Complaint.

## STATEMENT OF FACTS

### I.      Facts Common to All Plaintiffs

12.     Defendant holds and operates out of an office in Dallas, Texas.

13.     Plaintiffs were all employed at Defendant's Dallas, Texas office.

14.     Black employees were disproportionally denied opportunities to progress within the company into management positions and were held to different employment standards. Black employees make up an overwhelming majority of lower level positions. White employees make

**ORIGINAL COMPLAINT**

3

up an overwhelming majority of upper level management, creative, and finance positions within the company.

15. Black employees were often required to have college degrees and even graduate degrees for management level positions, while White employees with no college degrees were allowed to apply for and receive management level positions. Black applicants were also often required to go through many more interviews than White applicants during the process in order to be considered.

16. Defendant also practiced discriminatory hiring by creating and filling management level positions with underqualified White employees without posting them or allowing Black employees to apply. On several occasions, potential Black applicants would not know of an available opportunity for promotion until they received a company-wide email announcing the creation of said position and the employee who filled it. This was often done with White employees filling the majority of the positions. Black employees who pointed this out to their supervisors were often told the company was on the verge of creating many new upper management positions and to stay in touch when they materialized. Upon information and belief, Defendant never created any such positions.

17. As a result of Defendant's glass ceiling, a stark disparity of near racial segregation was allowed to flourish, dividing Defendant's employees by floor disproportionately by race.

18. The restroom facilities on floor eight, where a disproportionate number of Black employees worked, were of such poor quality and so poorly maintained that employees often used the building's public restrooms in the downstairs plaza. The restroom facilities on floor nine, where a disproportionate number of White employees work, were not only of significantly higher quality,

**ORIGINAL COMPLAINT**

they also were constantly stocked with personal grooming products and Bath and Body Works products.

19. On occasion, Defendant held corporate luncheons for employees on the ninth floor. When ninth floor employees finished with the food, the leftovers were taken down to the eighth floor for the other employees to consume.

## II.      Facts Specific to Individual Plaintiffs

### Raymond Donnelly III

20. Plaintiff Raymond Donnelly III ("Donnelly") was employed by Defendant in its Dallas, Texas office from in or around September 2014 until in or around October 2018. Throughout his employment, Plaintiff Donnelly was subjected to disparate treatment and harassment because of his race.

21. In or around Fall 2014, Plaintiff Donnelly assisted a fellow new-hire in reporting her concerns of gender discrimination to their superiors. Upon information and belief, management privately began referring to Plaintiff Donnelly as "combative."

22. In or around 2016, it was reported to Plaintiff Donnelly's manager that one Enrollment Specialist told another that Plaintiff Donnelly, "is good, but he's not coachable." Plaintiff Donnelly reported the comment to Defendant's Human Resources Department ("HR"). Upon information and belief, HR took no corrective action.

23. In or around 2016, Plaintiff Donnelly's supervisor, Melvin Thomas, informed Plaintiff Donnelly and the rest of his team that he had defended them against what he perceived as attacks from Director Miranda Behn. Plaintiff Donnelly reported this to HR Head, Jennifer Shelton, as he felt he was being sabotaged and targeted by Director Behn.

**ORIGINAL COMPLAINT**

5

24. Within six (6) months, Plaintiff Donnelly won his first of several internal awards at the company for performance.

25. In or around July 2017, Plaintiff Donnelly applied for a promotion to Team Lead and was denied, in part, for a lack of "internal accomplishments."

26. In or around June 2018, Plaintiff Donnelly applied for the open position of Senior Enrollment Specialist. Immediately thereafter, Plaintiff Donnelly began receiving write ups and coaching. Eventually, he was placed on corrective action for a failed call review, which was not uniform practice and made Plaintiff Donnelly ineligible for promotion or transfer within the company. Plaintiff Donnelly requested a meeting with Laura Smith in Quality Assurance and was told by Ms. Smith that call reviews are a training tool and not "normally for tenured and successful agents." Shortly thereafter, Plaintiff Donnelly was placed on a 90-day final notice due to the call reviews. This 90-day period was set to expire in October 2018 and, thus, restore his eligibility for promotion.

27. In or around August 2018, Plaintiff Donnelly filed a complaint with HR regarding Defendant's disparaging treatment and discriminatory hiring and promotional practices.

28. In or around early October 2018, Plaintiff Donnelly who usually worked remotely from his home, voluntarily went into the office to attend the performance of a play Defendant presented to employees. Plaintiff Donnelly was assured by his manager Sal Mahleri that he would be paid for the hours. The next day, Mr. Mahleri accused Plaintiff Donnelly of leaving the play early and attempted to write him up for the incident. After Plaintiff Donnelly reminded Mr. Mahleri that he had explicitly told Plaintiff Donnelly his attendance at the play was optional, Mr. Mahleri did not respond.

29. On several occasions, Plaintiff Donnelly's performance metrics were manipulated by Mr. Mahleri to show a failure to meet monthly goals which again prevented Plaintiff Donnelly from being eligible for promotion. On at least two occasions, Plaintiff Donnelly addressed these issues with Mr. Mahleri, but the issues were only corrected after the positions Plaintiff Donnelly intended on applying for were filled. On one occasion, Plaintiff Donnelly presented Mr. Mahleri with evidence that showed Plaintiff Donnelly's official job performance metrics were wrong, and he had in fact exceeded his goals. Mr. Mahleri's response was to present Plaintiff Donnelly with a write up.

30. In or around Fall 2018, Plaintiff Donnelly disclosed to Mr. Mahleri in a meeting that he was dealing with a lot of personal issues of a family nature that would probably require Plaintiff Donnelly to use some of his paid time off. Mr. Mahleri encouraged Plaintiff Donnelly to put his family first and make hard sacrifices. Mr. Mahleri then suggested Plaintiff Donnelly put in his two weeks' notice and resign in order to handle his personal issues.

31. In or around Fall 2018, Plaintiff Donnelly filed a complaint with HR regarding Mr. Mahleri's disparaging treatment and ongoing harassment and stated that he believed that this treatment and harassment was because of his race.

32. On October 8, 2018, Plaintiff Donnelly was called to a meeting to sign the write up he had been given by Mr. Mahleri, but it was cancelled when Mr. Mahleri was absent from work.

33. On October 9, 2018, Plaintiff Donnelly had a meeting with HR regarding his complaint against Mr. Mahleri and expressed that he felt he was about to be terminated.

34. On October 10, 2018, Plaintiff Donnelly attended a company-wide talent show in the office and asked Mr. Mahleri to sit down with him and HR to discuss the disparaging treatment and harassment. Mr. Mahleri told Plaintiff Donnelly they would meet after the talent show. After

**ORIGINAL COMPLAINT**

the talent show, Plaintiff Donnelly received a message from Mr. Mahleri asking him to go up to the ninth floor to sign the write up but when Plaintiff Donnelly entered Mr. Mahleri's office, HR employee Tena Bracy was also present, and they began discussing Plaintiff Donnelly's termination.

35. On October 10, 2018, Plaintiff Donnelly was subjected to a discriminatory and retaliatory termination. Defendant gave different, conflicting pretextual reasons for this termination to Plaintiff Donnelly and Plaintiff Donnelly's peers.

### O'tara Johnson

36. Plaintiff O'tara Johnson ("Johnson") was employed by Defendant in the Dallas, Texas office from in or around November 2015 to in or around January 2019.

37. At the time of termination, Plaintiff Johnson was employed as an Enrollment Manager.

38. In or around February 2017, Plaintiff Johnson was promoted to a managerial position and received a modest pay raise but was told she could not negotiate her new salary.

39. In or around September 2017, two of Plaintiff Johnson's male colleagues were promoted to managerial roles equal to Plaintiff Johnson's. The three managers realized there was a pay discrepancy between Plaintiff Johnson and her male counterparts, as they had been allowed to negotiate performance-based bonuses and new salaries.

40. In or around September 2017, Plaintiff Johnson met with James Tweet, Director of Enrollment, regarding the pay discrepancy. Mr. Tweet relayed Plaintiff Johnson's complaint of gender discrimination to Mary Ann Duran and Jennifer Shelton in Human Resources ("HR").

41. In or around December 2017, Mr. Tweet informed Plaintiff Johnson that HR and upper management had decided nothing was to be done regarding her complaint. Plaintiff Johnson

divulged the names of the two male managers and requested a meeting with Senior Vice President Earl Frischkorn. Mr. Tweet said he would relay the information.

42.     In or around January 2018, Mr. Frischkorn contacted Plaintiff Johnson to inform her they would be giving her a raise to rectify the situation effective March 2018 and informed Plaintiff Johnson she would not receive backpay for this act of gender-based pay discrimination.

43.     Throughout Plaintiff Johnson's employment with Defendant, White employees were routinely offered promotions and less stringent hiring standards than Black employees.

44.     In or around April 2018, Plaintiff Johnson noticed differences in Defendant's hiring and promotion practices with respect to race.

45.     In or around July 16, 2018 Plaintiff Johnson spoke to Mark Mendoza, the Vice President of Enrollment, and raised her concerns regarding Defendant's discriminatory promotional practices based on race. Plaintiff Johnson also asked Mr. Mendoza about a position she was interested in applying for and Defendant stated would be posted soon. Mr. Mendoza told Plaintiff Johnson that they were not ready to post the job just yet. Upon information and belief, Defendant waited until a White employee's six (6) month write up expired on December 12, 2018 and promoted her without posting the position on December 14, 2018 over several equally qualified Black candidates who were not on write ups.

46.     Additionally, Plaintiff Johnson and other Black employees were held to certain requirements in order to be considered for certain positions, while White coworkers and applicants were not. For example, Black employees were sometimes required to have bachelor's degrees or higher degrees of education for positions that White employees held with only a high school diploma.

47. In or around December 18, 2018, Plaintiff Johnson filed a complaint with Mary Ann Duran regarding Defendant's discriminatory hiring and promotional practices based on gender and race. Plaintiff Johnson was in the process of interviewing for a promotion when she realized White counterparts received promotions without an interview process while Plaintiff Johnson and other Black employees were being required to participate in five (5) to eight (8) in-person interviews. Plaintiff Johnson specifically asked to be contacted by someone familiar with Defendant's hiring and promotional criteria but no one in HR was willing or able to do so.

48. On or around January 9, 2019, Plaintiff Johnson received an unwarranted disciplinary write up for something that occurred several months prior. Plaintiff Johnson refused to sign this retaliatory write up.

49. On or around January 10, 2019, Plaintiff Johnson received a call from Wendy Fischer, a manager in a different department, who asked if she would be willing to transfer to their department, given her excellent job performance. Plaintiff Johnson was told that Ms. Fischer and Hiring Manager Bernadette Gratton were working out a transition plan.

50. On or around January 11, 2019 while off of work for personal reasons, Plaintiff Johnson met with Ms. Duran regarding the retaliatory write up. Plaintiff Johnson also again raised her concerns of racial discrimination and disparate treatment of Black employees within the company. Ms. Duran informed Plaintiff Johnson the investigation was still in progress. Upon information and belief, no investigation was ever conducted. Ms. Duran also informed Plaintiff Johnson that her departmental transfer Ms. Fischer and Ms. Gratton were working on would be denied and that she could apply for the transfer in six (6) months after her write up expired.

**ORIGINAL COMPLAINT**

51. Plaintiff Johnson then attempted to address the issue with Executive Vice President Justyna Dymerska. Ms. Dymerska cancelled both of their scheduled meetings and informed Plaintiff Johnson she would back whatever decision HR made.

52. Plaintiff Johnson further attempted to address the issue with Mark Mendoza, the Vice President of Enrollment, who directed her back to HR. Plaintiff Johnson was subjected to a retaliatory termination on January 14, 2019.

### Dante Williams

53. Plaintiff Dante Williams ("Williams") was employed by Defendant in the Dallas, Texas office from in or around March 2013 until in or around July 2018.

54. Plaintiff Williams was employed by Defendant as a Team Lead in the workforce management department. Plaintiff Williams requested on several occasions to have his title changed to reflect the heavily managerial aspects of his job but was denied. Defendant then created Manager positions for several of Plaintiff Williams' White colleagues.

55. Plaintiff Williams' position afforded him access to Defendant's internal demographic data which showed approximately 80% of Defendant's eighth-floor employees were Black, while only 5% of ninth-floor employees were Black. Upon information and belief, the ninth floor consists of Defendant's executive, upper management, marketing, and public relations teams while the eighth floor consists of enrollment services and sales teams.

56. In or around August 2017, Plaintiff Williams applied for the position of Call Center Operations Manager, which he was fully qualified for. In an informal interview, Plaintiff Williams was told by Vice President of Enrollment Services Tom Benson, who is White, "You don't meet the qualifications. But I don't know what I'm looking for yet." Plaintiff Williams was not granted

**ORIGINAL COMPLAINT**

an interview for the position and, upon information and belief, Mr. Benson removed the posting due to a lack of other similarly qualified applicants to Mr. Williams.

57. In or around Spring 2018, Plaintiff Williams again applied for a promotion, this time as Director of Operations and Analytics. The description for the position not only mirrored the description of the previously posted Call Center Operations Manager, which he was denied an opportunity to interview for, it also mirrored Plaintiff Williams' then position as well.

58. In or around April 2018, Plaintiff Williams approached Mr. Benson's successor as Vice President of Enrollment Services, Kyle Farnsworth, who is also White, regarding the Director of Operations and Analytics position. Mr. Farnsworth told Plaintiff Williams that he "did not meet the skill set." Plaintiff Williams was not granted an interview for the position. Upon information and belief, Scott Stacy, a White employee, was placed in the position without being subjected to promotional procedures to which the majority of Black employees were not subjected. Mr. Stacy had neither call center nor workforce management experience, which was listed in the position's description. Additionally, other positions for which Plaintiff Williams was well qualified for were created, filled, and closed before Plaintiff Williams or any other equally qualified Black employees were aware of them being posted.

59. In or around April 2018, Plaintiff Williams met with Justyna Dymerska, Defendant's Executive Vice President, and pointed out the racial disparity within the company. Plaintiff Williams also complained about the disparate treatment of Black employees within the company and the systemic discrimination of Defendant's promotion and hiring practices. Almost immediately, Plaintiff Williams was subjected to retaliatory treatment. Plaintiff Williams was stripped of several managerial duties, including supervising his employees' time. In addition, Plaintiff Williams' training sessions, that he had performed meritoriously for years, were now

secretly audited by his supervisors. Plaintiff Williams' projects' goals were extended but he was not allowed to take overtime in order to complete the extra work required while White managers were allowed to consistently miss deadlines without issue. White managers also were allowed to require their subordinates to work overtime, which directly impacted Plaintiff Williams' ability to do his job. Plaintiff Williams' job duties relied on these White manager's projects being done but he was not allowed to address this issue with them, and White managers were given final say over Plaintiff Williams' work product, which only he produced. No corrective action was taken by Defendant.

60. Plaintiff Williams brought the issue to his direct supervisor, David Bent, who is White, on a near weekly basis due to the stress it caused him. Plaintiff Williams told Mr. Bent he believed the disparaging treatment was continuing due to his race. After Mr. Bent was let go from his position for unrelated reasons, Plaintiff Williams continued to raise his concerns of racial discrimination with both Mr. Stacy and Mr. Farnsworth. Upon information and belief, no corrective actions were ever taken.

61. On or around July 3, 2018, Plaintiff Williams was constructively discharged from the company.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
### (Discrimination as to Plaintiff Johnson and Plaintiff Williams)

62. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

63. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* as Defendant has engaged in the practice of discrimination

with respect to the terms and conditions of Plaintiffs' employment because of their race, color, and/or sex.

64. Plaintiffs' requests for relief are set forth below.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
### (Hostile Work Environment as to Plaintiff Johnson and Plaintiff Williams)

65. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

66. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* as Plaintiffs were subjected to a hostile work environment on the basis of their race, color, and/or sex

67. Plaintiffs' requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
### (Retaliation as to Plaintiff Johnson and Plaintiff Williams)

68. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

69. Plaintiffs lodged complaints with Defendant regarding the discrimination and hostile work environment to which they were subjected, and as such, engaged in protected activity under Title VII.

70. Defendant retaliated against Plaintiffs by, among other things, subjecting them to unwarranted discipline and retaliatory terminations.

71. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

72. Plaintiffs' requests for relief are set forth below.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*
(Discrimination as to all Plaintiffs)**

73. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

74. The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* as Defendant has engaged in the practice of discrimination against Plaintiffs with respect to the terms and conditions of Plaintiffs' employment because of their race and/or color.

75. Plaintiffs' requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*
(Hostile Work Environment as to all Plaintiffs)**

76. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

77. The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* as Plaintiffs were subjected to a hostile work environment on the basis of their race and/or color.

78. Plaintiffs' requests for relief are set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF
Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*
(Retaliation as to all Plaintiffs)**

79. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

80. Plaintiffs lodged complaints with Defendant regarding the discrimination and hostile work environment to which they were subjected, and as such, engaged in protected activity under Title VII.

81. Defendant retaliated against Plaintiffs by, among other things, subjecting them to unwarranted discipline and retaliatory terminations.

82. The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq*.

83. Plaintiffs' requests for relief are set forth below.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
**The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001** *et seq.*
**(Discrimination as to Plaintiff Johnson and Plaintiff Williams)**

84. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

85. The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as Defendant has engaged in the practice of discrimination with respect to the terms and conditions of Plaintiffs' employment because of their race, color, and/or sex.

86. Plaintiffs' requests for relief are set forth below.

### AS AND FOR A EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
**The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001** *et seq.*
**(Hostile Work Environment as to Plaintiff Johnson and Plaintiff Williams)**

87. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

88. The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*, as Plaintiffs were subjected to a hostile work environment on the basis of their race, color, and/or sex

89. Plaintiffs' requests for relief are set forth below.

### AS AND FOR A NINTH CAUSE OF ACTION FOR A VIOLATION OF
**The Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.***
**(Retaliation as to Plaintiff Johnson and Plaintiff Williams)**

90. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

91. Plaintiffs lodged complaints with Defendant regarding the discrimination and hostile work environment to which they were subjected, and as such, engaged in protected activity under the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*

92. Defendant retaliated against Plaintiffs by, among other things, subjecting them to unwarranted discipline and retaliatory terminations.

93. The conduct alleged herein violates the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*

94. Plaintiffs' requests for relief are set forth below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 et seq.; the 1991 Civil Rights Act, as amended, 42 U.S.C. § 1981a et seq.; Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.; and the Texas Employment Discrimination Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.*;

B. All damages which Plaintiffs have sustained as a result of Defendant's conduct, including back pay, front pay, benefits, general and specific damages for lost compensation, and job benefits they would have received but for Defendant's discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

C. Exemplary and punitive damages in an amount commensurate with Defendant's ability and so as to deter future malicious, reckless, and/or intentional conduct;

D. Awarding Plaintiffs the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

E. Pre-judgment and post-judgment interest, as provided by law;

F. That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

G. Granting Plaintiffs other and further relief as this Court finds necessary and proper.

Plaintiffs also seek injunctive relief, including, but not limited to:

H. Training on the subject of employment discrimination for all of Defendant's employees;

I. Implicit bias training for all managers conducted by reputable outside vendors;

J. Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

K. Active monitoring of the work areas to ensure compliance with discrimination policies;

L. Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief; and

Plaintiffs further demand that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

**ORIGINAL COMPLAINT**

Dated: May 1, 2020                                  Respectfully submitted,

                                            */s/ David W. Henderson*
                                            David W. Henderson
                                            Texas State Bar No. 24032292
                                            dhenderson@equalrights.law
                                            Jay D. Ellwanger
                                            Texas State Bar No. 24036522
                                            jellwanger@equalrights.law
                                            Esha Rajendran
                                            Texas State Bar No.24105968
                                            erajendran@equalrights.law
                                            Ellwanger Law LLLP
                                            400 S. Zang Blvd. Ste. 1015
                                            Dallas, TX 75208
                                            Telephone: (469) 998-6775
                                            Facsimile: (469) 998-6775