UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAYMOND DONNELLY, O'TARA JOHNSON, AND DANTE WILLIAMS, | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 3:20-CV-01106-X |
| ACADEMIC PARTNERSHIPS, LLC, | § § § § | |
| *Defendant.* | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Academic Partnership, LLC's (Academic) motion for summary judgment on Plaintiff Dante Williams's claims. [Doc. No. 23]. Though originally filed as a motion for judgment on the pleadings, the Court notified the parties of its intention to convert the motion to one for summary judgment under Federal Rule of Civil Procedure 12(d). [Doc. No. 57]. After careful consideration, and for the reasons explained below, the Court **GRANTS** Academic's motion and **DISMISSES WITH PREJUDICE** Williams's claims. A final judgment as to Williams will follow shortly.

I. Factual Background

Academic is a higher education company that partners with colleges and universities in establishing and maintaining online course curricula. Dante Williams is one of several plaintiffs who has brought this action against Academic, alleging

1

that Academic engaged in impermissible racial discrimination against Black employees such as Williams. Williams was employed by Academic from March 2013 until July 2018 and served as a team lead in the workforce management department. Williams claims that, beginning in August 2017, he was repeatedly discriminated against and denied promotions for which he applied in favor of White candidates. In April 2018, Williams met with Academic's executive vice president and complained to her about the racial disparity within Academic, the disparate treatment of Black employees, and systemic discrimination within Academic's hiring and promotions practices. Williams alleges that, after he voiced these concerns, he was subjected to retaliatory treatment, and continued to be treated poorly compared to White employees. Williams brought these issues to the attention of his direct supervisor on a nearly weekly basis and continued to frequently complain of this discriminatory treatment after his direct supervisor left Academic. Academic constructively discharged Williams in July 2018. Williams timely filed complaints of discrimination with the Equal Employment Opportunity Commission and sued Academic in May 2020, under various provisions of Title VII, Section 1981 of the Civil Rights Act of 1866, and the Texas Labor Code.

Academic filed a motion for judgment on the pleadings against Williams alone, which, as explained above, the Court has converted to a motion for summary judgment.[1] Academic's argument does not relate to the merit of Williams's claims. Rather, Academic argues that Williams is judicially estopped from pursuing his

---

[1] Doc. No. 57.

claims because he failed to disclose them as required in his bankruptcy proceeding. Williams filed for Chapter 13 bankruptcy in June 2017, and the bankruptcy court confirmed his plan in November 2017. Williams never amended his petition to disclose his claims against Academic, either before or after the bankruptcy court confirmed his plan. In December 2018, more than five months after Academic discharged Williams, the bankruptcy court dismissed Williams's case for his failure to make the required payments under his plan.

## II.  Legal Standards

"Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party,[2] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[4]

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation."[5] "The purpose of the doctrine is to protect the integrity of the judicial process, by prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest."[6] "Judicial estoppel

---

[2] *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016).

[3] FED. R. CIV. P. 56(a).

[4] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (cleaned up).

[6] *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (cleaned up).

has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently."[7]

"Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets . . . ."[8] Correspondingly, "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset."[9] "When a debtor fails to disclose a pending or potential claim in her bankruptcy petition, she is judicially estopped from bringing that claim later."[10]

The debtor is not relieved of this duty to disclose pending or potential claims after filing his initial petition or after the bankruptcy confirms his plan. Rather, "Chapter 13 debtors have a continuing obligation to disclose post-petition causes of action."[11] Likewise, "debtors must disclose post-confirmation assets to the bankruptcy court."[12] Even where it is not clear that creditors will be entitled to recover a post-confirmation asset, "debtors have a duty to disclose to the bankruptcy court notwithstanding uncertainty."[13] The Fifth Circuit has explained the "obvious"

---

[7] *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013).

[8] *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008).

[9] *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

[10] *Kamont v. West*, 83 F. App'x 1, 3 (5th Cir. 2003).

[11]  *Allen*, 813 F.3d at 572 (cleaned up).

[12] *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 766 F. App'x 38, 42 (5th Cir. 2019) (cleaned up).

[13] *Flugence*, 738 F.3d at 130.

reason for this rule: Whether a particular asset should be available to satisfy creditors is often a contested issue, and the debtor's duty to disclose assets—even where he has a colorable theory for why those assets should be shielded from creditors—allows that issue to be decided as part of the orderly bankruptcy process.[14]

### III.   Analysis

Here, Williams does not dispute that he failed to disclose his claims to the bankruptcy court prior to its dismissal of his case for failure to make payments in December of 2018. Rather, Williams claims that in his bankruptcy proceeding he was only asked whether he had actually filed a lawsuit or made a demand for payment, not whether he had any potential claims.[15] But the bankruptcy petition Williams filled out required disclosure of "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment."[16] Williams indicated that he had no such claims. Although he had a continuing obligation to disclose post-confirmation assets to the bankruptcy court, he never notified the court of his claims against Academic. Because Williams had an "affirmative duty" to disclose his claims against Academic to the bankruptcy court, his failure to do so constituted an implicit representation that he had none.[17] By filing this lawsuit—which is predicated on events that allegedly occurred prior to the bankruptcy court's dismissal of Williams's

---

[14] *Id.*; *see also Allen*, 813 F.3d at 572; *Bias*, 766 F. App'x at 42.

[15] Doc. No. 25 at 6; Doc. No. 25-1 at 2.

[16] Doc. No. 24-1 at 13. Williams does not contest the authenticity of this document or offer any explanation whatsoever as to the discrepancy between it and his representation to this Court regarding its contents. So, there is no genuine issue as to whether Williams was asked to disclose potential claims.

[17] *Flugence*, 738 F.3d at 130.

case—Williams "has asserted a legal position that is plainly inconsistent with a prior position."[18] So, the first element of judicial estoppel is satisfied.

Next, the Court must consider whether "a court accepted [Williams's] prior position."[19] Here, based on Williams's representations in his petition—including his indication that he did not have any claims against third parties—the bankruptcy court confirmed Williams's plan. Had Williams disclosed his post-petition causes of action against Academic as required, the bankruptcy court "may well have altered [his] plan."[20] Accordingly, the second element of judicial estoppel is also satisfied.

Finally, the Court considers whether Williams acted inadvertently in failing to disclose his claims to the bankruptcy court.[21] "To establish inadvertence . . . [Williams] may prove either that [he] did not know of the inconsistent position or that [he] had no motive to conceal it from the court."[22] To demonstrate a lack of knowledge, Williams may not simply show he was unaware that he was obligated to disclose his claims. In fact, whether Williams knew he had a duty to disclose his claims is "irrelevant."[23] Rather, he must demonstrate that he was "unaware of the facts giving rise to [his claims]."[24] And by his own allegation, Williams continually

---

[18] *Id.* at 129.

[19] *Id.*

[20] *Id.* at 130.

[21] *Id.* at 129.

[22] *Id.* at 130 (cleaned up).

[23] *Allen*, 813 F.3d at 573.

[24] *Id.*; *see also, e.g., Bryant v. Miss. Div. of Medicaid*, 4:13-CV-123-DMB-RP, 2017 WL 706316 at *2 (N.D. Miss. Feb. 22, 2017); *Pete v. Capital One, N.A.*, 4:17-CV-594-A, 2018 WL 3150424, at *4 (N.D. Tex. June 26, 2018) (McBryde, J.).

voiced his complaints of discrimination that are basis of this suit to his supervisors at Academic prior to his discharge in July 2018. So, he was aware of the facts underlying his claims. Accordingly, the third element of judicial estoppel is satisfied.[25]

After confirming that Williams knew of his inconsistent position, the Court next must consider whether Williams had a motive to conceal it. "[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure."[26] Had Williams disclosed his claims, "his creditors may have sought modification and the bankruptcy court might have modified his plan to require paying some of the interest, paying over a shorter period, or paying some of the discharged debts."[27] Williams could "reap a windfall had [he] been able to recover on the undisclosed claim[s] without having disclosed it to the creditors,"[28] so he had a motive to conceal them. Because Williams both knew

---

[25] Williams argues that his actions were inadvertent because he was not aware that he had potential legal claims against Academic until he contacted and met with his lawyers in March 2020. As explained above, the relevant question is not whether Williams knew that he had legal claims, but whether Williams knew the facts giving rise to the claims. *Allen*, 813 F.3d at 573. But even if more detailed legal knowledge were necessary, the Court would still conclude that Williams did not act inadvertently. While he contends that he became aware that he had legal claims in March 2020, Williams filed his Equal Employment Opportunity Commission charge—a condition precedent to filing such an employment discrimination lawsuit—in April 2019. Despite Academic pointing out this discrepancy, Williams again offers no explanation and does not point to any event between the bankruptcy dismissal in December 2018 and his charge filing in April 2019 by which he became aware that he had legal claims.

[26] *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (cleaned up).

[27] *GSDMIdea*, 798 F.3d at 273.

[28] *Love*, 677 F.3d at 262 (cleaned up).

of his inconsistent position and had a motive to conceal it, the third and final element of judicial estoppel is satisfied.

Notwithstanding the satisfaction of each element of judicial estoppel, Williams argues that the Court should nonetheless deny Academic's motion. After all, "judicial estoppel is an equitable doctrine and the decision whether to invoke it [is] within the court's discretion."[29] Doubling down on his contention that he was not even aware he had claims against Academic until he met with lawyers, Williams insists it was not his intent to play "fast and loose" with the courts,[30] so the Court should not dismiss his claims.

In advancing this argument, Williams relies heavily on *Kane v. National Union Fire Insurance Co.*, where the Fifth Circuit reversed the district court's conclusion that judicial estoppel required dismissal of the plaintiffs' claims because they had not disclosed the claims in their Chapter 7 bankruptcy proceeding.[31] But *Kane* hinged on the role of the bankruptcy trustee. Unlike here, after the Kanes filed their lawsuit, the bankruptcy court reopened their case post-discharge so that the trustee could administer these previously undisclosed claims for the benefit of the estate and the creditors.[32] The trustee's role in pursuing the claim meant that equitable estoppel would only serve to stop the trustee and creditors from fulfilling their rightful roles.[33]

---

[29] *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (alteration in original).

[30] *Coastal Plains*, 179 F.3d at 205.

[31] *Kane*, 535 F.3d 380 at 384.

[32] *Id.* at 383.

[33] *Id.* ("[T]he only way the Kanes' creditors would [have been] harmed [was] if judicial estoppel [was] applied to bar the Trustee from pursuing the claim against Defendants on behalf of the estate.").

8

And any benefit to the Kanes (from not judicially estopping the trustee from pursuing the claim) was minimal. The Kanes "[stood] to benefit [from the lawsuit] only in the event that there [was] a surplus after all debts and fees ha[d] been paid."[34] To further explain its reasoning, the Fifth Circuit then quoted Judge Easterbrook with approval:

> The [debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out [the debtor's claim against the defendant] would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what [the debtor] has been doing behind their backs. Creditors gypped by [the debtor's] maneuver are hurt a second time by the district judge's decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.[35]

Here, the bankruptcy court dismissed Williams's plan for his failure to make the required payments prior to the commencement of this lawsuit, so Williams has no live bankruptcy plan in place and there is no trustee. Neither party has advised the Court as to whether Williams still has creditors, nor has Williams argued that the Court should decline to estop his claims based on concerns for his creditors' interests.[36]

Williams also relies on *Gilbreath v. Averitt Express, Inc.*, where the district court determined that all the elements of judicial estoppel were satisfied but

---

[34] *Id* at 387.

[35] *Id.* (alternation in original) (quoting *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006).

[36] And while Williams's recovery on his claims against Academic might make him more likely to eventually pay back his creditors—again, if he still has any—that is a much more remote consideration than in *Kane*, where a live bankruptcy proceeding existed which entitled the Kanes' creditors to directly acquire the Kanes' assets, including any damages from the lawsuit.

9

nevertheless declined to estop the plaintiff's claim.[37] Central to the *Gilbreath* court's conclusion, though, was the fact that there was then "considerable debate over whether Chapter 13 debtors must disclose assets acquired post-confirmation."[38] Since *Gilbreath* was decided, the Fifth Circuit has ended that debate: "[Chapter 13] [d]ebtors must disclose post-confirmation assets to the bankruptcy court."[39] So, neither *Kane* nor *Gilbreath* supports Williams's argument. Accordingly, the Court **GRANTS** Academic's motion for summary judgment and **DISMISSES WITH PREJUDICE** Williams's claims.[40]

Academic also requests that the Court award them reasonable fees and costs. Williams does not mention Academic's request in his responsive briefing. Should Academic still wish to recover these reasonable fees and costs, it may file a motion for fees and costs that sets out the legal basis for doing so, accompanied by an exhibit describing the various items—including the work done, the time expended, and the

---

[37] *Gilbreath v. Averitt Exp., Inc.*, No. 09–1922, 2010 WL 4554090 (W.D. La. Nov. 3, 2010).

[38] *Id.* at *9.

[39] *Bias*, 766 F. App'x. at 42 (cleaned up); *see also GSD&M Idea*, 2014 WL 11320447 at *6.

[40] While neither party points to it, the Court notes that Circuits others than the Fifth have adopted more expansive judicial estoppel inquiries. For example, recently the *en banc* Eleventh Circuit—expanding the judicial estoppel inquiry beyond that of the Fifth Circuit and its own precedents—considered factors such as "the plaintiff's level of sophistication, his explanation for the omission, whether he subsequently corrected the disclosures, and any action taken by the bankruptcy court concerning the nondisclosure." *Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017). In significant part because the plaintiff in *Slater* had immediately admitted and corrected her nondisclosure of claims to the Chapter 7 trustee and the bankruptcy court upon learning of it, the Eleventh Circuit deemed judicial estoppel inappropriate. *Id.* at 1178. Williams's response, on the other hand, has been to make further misrepresentations to the Court in an attempt to explain away his nondisclosure. Furthermore, the Eleventh Circuit noted that, as Judge Easterbrook explained in *Biesek*, 440 F.3d at 413, estoppel of the plaintiff's claims would injure her creditors because she had a live bankruptcy plan in place. *Slater*, 871 F.3d at 118. So, even under a more expansive judicial estoppel inquiry, Williams's claims would likely still be judicially estopped.

associated hourly billing rates—for which recovery is sought within 14 days of the final judgment.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Academic's motion for summary judgment and **DISMISSES WITH PREJUDICE** Williams's claims. By separate order, the Court will issue a final judgment as to Williams.

**IT IS SO ORDERED** this 7th day of March, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE